IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| DISCOVERY COMMUNICATIONS, LLC, <br>     One Discovery Place <br>     Silver Spring, Maryland  20910 <br>     Montgomery County <br><br>     Plaintiff, <br><br> v. <br><br> COMPUTER SCIENCES CORPORATION, <br>     3170 Fairview Park Drive <br>     Falls Church, Virginia  22042 <br><br>     Defendant. | Case No. |

## COMPLAINT

Plaintiff Discovery Communications, LLC ("Discovery"), through counsel, hereby submits this Complaint against Defendant Computer Sciences Corporation ("CSC"), and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Discovery Communications, LLC is a Delaware limited liability company with its principal place of business at One Discovery Place, Silver Spring, Maryland 20910. Discovery is a wholly-owned subsidiary of Discovery Communications, Inc. ("DCI"), a public company. DCI has been a public company since September 2008.

2. Defendant CSC is a Nevada corporation with its principal place of business at 3170 Fairview Park Drive, Falls Church, Virginia 22042.  CSC is also a public company.

3. This Court has personal jurisdiction over CSC, because CSC has done and continues to do substantial business in this judicial district.

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events, omissions and/or damages giving rise to this claim occurred in this district.

## STATEMENT OF FACTS

6. On February 8, 2008, Discovery entered into an Employment Agreement with Thomas R. Colan, by which Mr. Colan agreed to serve as Discovery's Executive Vice President, Chief Accounting Officer. Discovery and Mr. Colan entered into an Amendment to Employment Agreement on January 1, 2009 and entered into a Second Amendment to Employment Agreement on January 20, 2011. These three agreements (cumulatively, the "Employment Agreement") constitute Mr. Colan's contract with Discovery, a copy of which is attached hereto as Exhibit A.

7. The Employment Agreement originally called for a term of employment beginning on March 17, 2008 and ending on March 16, 2011. The Second Amendment to Employment Agreement extended the conclusion of the term of employment from March 16, 2011 to March 16, 2013. Id.

8. Mr. Colan began work on March 17, 2008, at Discovery's offices in Silver Spring, Maryland.

9. Under the Employment Agreement, Discovery agreed to employ Mr. Colan "to render exclusive and full-time services as Executive Vice President, Chief Accounting Officer. Executive's duties shall be consistent with his title and duties, and as otherwise directed by Company." (Employment Agreement § I(A).)

2

10. The Employment Agreement also provides:

> During the period Executive is employed by Company, Executive covenants and agrees not to engage in any other business activities whatsoever, or to directly or indirectly render services of a business, commercial or professional nature of any other business entity or organization, regardless of whether Executive is compensated for those services. The only two exceptions to this provision are if: (1) Executive obtains the prior written consent of Company's CEO; or (2) Executive's engagement in business activities is limited to Executive's overseeing and/or managing his personal investments and assets, provided that: (a) such activity is at all times in compliance with Company's Insider Trading Policy and applicable law; (b) such activity is not undertaken during business hours, except for minor incidental activities that cannot be performed outside of business hours; and (c) such activity does not interfere with, adversely impact, or prevent Executive's timely performance of his duties under this Agreement.

(Employment Agreement § VI(E).)

11. The Employment Agreement also provides that "[i]f Executive terminates this Agreement before the Term of Employment has expired for a reason other than those stated in Section IV(D)(1) hereof, it will be deemed a material breach of this Agreement."  (Employment Agreement § IV(D)(5).)

12. The Employment Agreement also provides as follows regarding material breaches by Mr. Colan:

> In the event that Executive materially neglects his duties under Sections I(A) or (C) hereof or engages in other conduct that constitutes a breach by Executive of this Agreement (collectively "Breach"), Company shall so notify Executive in writing, which notice shall describe the alleged Breach with reasonable specificity.  Executive will be afforded a one-time-only opportunity to cure such Breach within ten (10) days from receipt of such notice.  If no cure is achieved within this time, or if Executive engages in the same Breach a second time after once having been given the opportunity to cure, Company may terminate Executive's employment and this Agreement for "Cause" by written notice to Executive.

(Employment Agreement § IV(C)(2).)

13. On August 17, 2012, Mr. Colan tendered his resignation via email sent to Andrew Warren, Discovery's Chief Financial Officer.  In this email, Mr. Colan stated that he "was

contacted about an opportunity in the area" and that "[t]he first discussion that they initiated has resulted in an offer that I have accepted. . . . My last day with Discovery will be Thursday, August 30, 2012." A copy of this email is attached hereto as Exhibit B.

14. On August 21, 2012, Mr. Colan met with Mr. Warren and separately with Adria Alpert Romm, Discovery's Senior Executive Vice President, Human Resources. Each told Mr. Colan that he remained under contract with Discovery and that Discovery would not release him from his Employment Agreement.

15. On August 23, 2012, Mr. Colan informed Discovery that he intended to move forward with accepting employment elsewhere, but he refused to identify his prospective employer. Discovery then sent a letter to Mr. Colan advising him that he remained under contract with Discovery and that Discovery expected him to comply with the terms of the Employment Agreement, including the fixed-term that would not expire until March 16, 2013. A copy of this letter is attached hereto as Exhibit C.

16. Defendant CSC filed a Form 8-K on August 23, 2012, with the United States Securities and Exchange Commission, in which it "announced that it has appointed Thomas R. Colan as Vice President, Controller and Principal Accounting Officer." According to this filing, Mr. Colan would begin work at CSC on August 31, 2012. A copy of CSC's August 23, 2012 8-K is attached hereto as Exhibit D.

17. Upon discovering that CSC was Mr. Colan's "new" employer, Discovery undertook steps to and did verbally notify CSC's Vice President and General Counsel, William Deckelman on August 24, 2012, that Mr. Colan remained under contract with Discovery.

18. Further, on August 24, 2012, Discovery, through counsel, sent a letter to Mr. Deckelman, confirming in writing that Mr. Colan was "currently a party to an Employment

Agreement with Discovery, with a term that does not expire until March 16, 2013. . . . Discovery has not authorized Mr. Colan to provide services to any third party." A copy of this letter is attached hereto as Exhibit E.

19.  Neither Mr. Deckelman nor anyone at CSC responded to this letter.

20.  On August 27, 2012, Discovery sent another letter to Mr. Colan advising him again that his Employment Agreement did not terminate until March 16, 2013 and that Discovery did not accept his resignation. In addition, Discovery advised that Mr. Colan's noticed resignation constituted a material breach of the Employment Agreement and notified him that, pursuant to § IV(C)(2) of the Employment Agreement, he had ten (10) days to cure this breach. A copy of this letter is attached hereto as Exhibit F.

21.  Discovery also sent a copy of this letter to Mr. Deckelman. Once again, neither Mr. Deckelman nor anyone at CSC responded.

22.  On information and belief, Mr. Colan began work at CSC on August 31, 2012, during the cure period. Indeed, CSC posted Mr. Colan's biography on its website no later than August 31, 2012, identifying Mr. Colan as CSC's Controller and Principal Accounting Officer.

23.  On September 10, 2012, Discovery, through counsel, sent a letter to Mr. Colan and Mr. Deckelman, attaching copies of its letters dated August 23, 24, and 27. This letter also made clear to Mr. Deckelman and Mr. Colan that, because "CSC's public filings and website indicate that Mr. Colan indeed began work as a CSC employee on August 31, days after Mr. Colan and CSC were on notice of his continuing obligations to Discovery[,] . . . Discovery has a claim against CSC for tortious interference with Mr. Colan's Employment Agreement." A copy of this letter is attached hereto as Exhibit G.

24.  CSC employs Mr. Colan today as its Controller and Principal Accounting Officer.

25. Discovery has incurred damages due to the abrupt and disruptive departure of its Chief Accounting Officer.

## COUNT I

### (Tortious Interference)

26. Discovery adopts and incorporates by reference paragraphs 1 through 25 as if fully stated herein.

27. The Employment Agreement is a valid and enforceable contract between Discovery and Mr. Colan.

28. CSC was and is aware of the existence of the Employment Agreement.

29. By employing Mr. Colan, despite knowledge of the Employment Agreement between Mr. Colan and Discovery, CSC intentionally induced Mr. Colan to breach the Employment Agreement.

30. CSC did so knowing that Mr. Colan had been provided an opportunity by Discovery to cure the material breach, and while that cure period was pending.

31. CSC's actions were intentional, wrongful, without legal justification, and calculated to cause damage or loss to Discovery in its lawful business.

32. As a result of CSC's actions, Mr. Colan breached the Employment Agreement.

33. As a result of CSC's tortious interference with the Employment Agreement, Discovery has suffered actual damages.

34. CSC's actions were wanton, willful and malicious.

## PRAYER FOR RELIEF

Discovery respectfully requests that this Court enter judgment in its favor, and against CSC, as follows:

(a) Damages in an amount greater than $75,000, to be determined at trial;

(b) Punitive damages in an amount to be determined at trial;

(c) Pre- and post-judgment interest on the above amount;

(d) The costs of this action, including reasonable attorneys' fees; and

(e) Such other and further relief as this Court deems just and proper.

DATED: September 28, 2012

Respectfully submitted,

/s/ Christine Nicolaides Kearns
Christine Nicolaides Kearns (Bar No. 04662)
Keith D. Hudolin
PILLSBURY WINTHROP SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037-1122
Telephone: 202-663-8000
Facsimile: 202-663-8007
christine.kearns@pillsburylaw.com
keith.hudolin@pillsburylaw.com