IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DISCOVERY COMMUNICATIONS, LLC

v.  :  Civil Action No. DKC 12-2894

COMPUTER SCIENCES CORPORATION

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tortious interference with a contract case is a motion to dismiss filed by Defendant Computer Science Corporation ("CSC"). (ECF No. 5). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

**I. Background**

**A. Factual Background**

The following facts are taken from the complaint (ECF No. 1) and are construed in the light most favorable to Plaintiff Discovery Communications, LLC ("Discovery"), the non-moving party. Discovery entered into an employment contract with Thomas R. Colan ("Mr. Colan") on February 8, 2008. (ECF No. 1 ¶ 6). In this agreement, Mr. Colan agreed to serve as "Discovery's Executive Vice President [and] Chief Accounting Officer." (*Id.*). The contract "called for a term of employment

beginning on March 17, 2008 and ending on March 16, 2011." (*Id.* ¶ 7). Subsequently, Discovery and Mr. Colan entered into two amendments to the original employment contract. (*Id.* ¶ 6). The second amendment to the employment contract, entered into on January 20, 2011, "extended the conclusion of the term of employment from March 16, 2011 to March 16, 2013." (*Id.* ¶¶ 6, 7). The amended employment contract also specified that early termination by Mr. Colan would constitute a material breach. (*Id.* ¶ 11).[1]

On August 17, 2012, Mr. Colan resigned from Discovery by way of email. (ECF No. 1-1). The email indicated that he accepted a job offer from another company. (*Id.*). Mr. Colan's resignation stated that August 30, 2012, would be his final day with Discovery. (*Id.*).

On August 21, 2012, Mr. Colan met with two Discovery executives, each of whom told him that he remained under contract and that Discovery would not release him from the

---

[1] The employment contract allowed Mr. Colan to terminate his employment for "Good Reason" which was limited to: (1) a material breach of the contract by Discovery; (2) a material reduction in Mr. Colan's title, duties, and compensation; (3) a material change in the location of employment; or (4) a failure by Discovery to provide Mr. Colan the agreed upon units of stock. (ECF No. 1-1, at 6).

employment contract. (ECF No. 1 ¶ 14). Two days after meeting with Discovery leadership, Mr. Colan notified Discovery that he intended to breach his contract and accept employment elsewhere. (*Id.* ¶ 15).

Discovery learned that Defendant CSC intended to employ Mr. Colan through a Form 8-K filed by CSC with the United States Securities and Exchange Commission on August 23, 2012. (*Id.* ¶ 16). The following day, August 24, 2012, Discovery told CSC of Mr. Colan's employment contract and his continuing obligations under that contract. (*Id.* ¶ 17). That same day, Discovery sent a letter informing CSC that Mr. Colan was "currently a party to an Employment Agreement with Discovery, with a term that does not expire until March 16, 2013" and that "Discovery has not authorized Mr. Colan to provide services to any third party." (*Id.* ¶ 18) (quoting ECF No. 1-1). CSC did not respond. (*Id.* ¶ 19).

On August 27, 2012, Discovery sent another letter to both Mr. Colan and CSC, reiterating that the employment contract did not terminate until March 16, 2013 and that Mr. Colan's resignation was not accepted. (*Id.* ¶ 20). The letter also stated that Mr. Colan's August 30, 2012 resignation date constituted a material breach of the employment contract. (ECF

No. 1-1). In the same letter, Discovery provided Mr. Colan with "written notice of [Mr. Colan's] opportunity to cure the breach that [Mr. Colan's] resignation . . . would cause" and provided him a 10 day cure period. (*Id.*). CSC did not respond to the letter. (ECF No. 1 ¶ 21). Mr. Colan began work at CSC on August 31, 2012. (*Id.* ¶ 22).

   B. **Procedural Background**

On September 28, 2012, Discovery filed a complaint containing a single claim against CSC for tortious interference with the employment contract between itself and Mr. Colan. (ECF No. 1). On October 29, 2012, CSC filed a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 5). Discovery has opposed this motion (ECF No. 8), and CSC has replied (ECF No. 9).

II. **Standard of Review**

In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'" and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94

4

(2007); *Nemet Chevrolet, Ltd. v. Consumerafairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

A complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.* at 555. So, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted).

A motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of*

*Charlottesville, Va.*, 579 F.3d 380, 385–86 (4th Cir. 2009), *cert. denied*, 559 U.S. 992 (2010).

**III. Analysis**

In order to state a claim for tortious interference with a contract under Maryland law, Discovery must sufficiently allege the following elements: (1) a contract existed between Discovery and Mr. Colan; (2) CSC had knowledge of that contract; (3) CSC intentionally interfered with that contract; (4) Mr. Colan breached that contract; and (5) Discovery suffered damages as a result of Mr. Colan's breach. *See Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 249 F.Supp.2d 703, 710 (D.Md. 2003) (citing *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991)).

In Maryland, the law for tortious interference with a contract largely follows the Restatement (Second) of Torts. *Daugherty v. Kessler*, 264 Md. 281, 287-88 (1972) (demonstrating that Maryland has adopted Restatement (Second) of Torts § 766); *Stannard v. McCool*, 198 Md. 609, 617-18 (1951) (same); *see also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F.Supp.2d 399, 426-27 (D.Md. 2006) (emphasizing the Restatement (Second) of Torts § 766 requirement that the defendant have

knowledge that it is interfering with the performance of a contract).

Section 766 of the Restatement provides that to establish the second element of a tortious interference claim, "the actor must have knowledge of the contract with which he is interfering and of the fact that he is interfering with the performance of the contract." Restatement (Second) of Torts § 766 cmt. i. In Maryland, for a party to know it is interfering with the performance of a contract, the actor must have knowledge of the contractual duty with which he is interfering. *Md. Jockey Club v. ODS Techs., L.P.*, No. WMN-03-2124, 2005 WL 1200181, at *10 (D.Md. May 20, 2005) (citing *Stannard v. McCool*, 198 Md. at 618) (also noting that to be liable for tortious interference with a contract "the actor must have knowledge of the business expectation with which he is interfering . . . But it is not necessary that the actor appreciate the legal significance of the facts which give rise to the contractual duty. If he knows those facts, he is subject to liability even though he is mistaken as to their legal significance and believes that there is no contract or that the contract means something other than what it is judicially held to mean."); *see also N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12-3584, 2013 WL

1500333, at *3-4 (S.D.N.Y. Apr. 12, 2013) (N.Y. law)[2] (the "defendant need not be aware of all the details of a contract, [but] must have actual knowledge of the specific contract.") (citation omitted); *Medtech Prods. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 796-97 (S.D.N.Y. 2008) (N.Y. law) (dismissing tortious interference claim because complaint failed to allege defendants were aware of limitations that the employment contract imposed which created the third party's breach); *Leadsinger, Inc. v. Cole*, No. 05-5606, 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (N.Y. law) (tortious interference claim dismissed for failure to allege defendant's knowledge of relevant terms at the time of purported interference); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 58 F.Supp.2d 228, 267 n.21 (S.D.N.Y. 1999) (N.Y. law) (dismissing claim of tortious interference with a contract for failure to allege defendant's knowledge of the specific contract provision that third party breached); *Pitcock v. Kasowitz, Benson, Torres & Friedman, LLP*,

---

[2] Like Maryland, New York courts have relied upon the Restatement (Second) of Torts § 766 when deciding claims of tortious interference with a contract. *See, e.g.*, *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 8 N.Y.3d 422 (2007); *Guard-Life Corp. v. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980); *V. Marangi Carting Corp. v. Judex Enters., Inc.*, 655 N.Y.S.2d 832 (N.Y.Sup.Ct. 1997).

915 N.Y.S.2d 239, 241 (N.Y.App.Div. 2011) (N.Y. law) (finding plaintiff failed to state a claim for tortious interference with contract because it did not allege, in even conclusory language, the specific provisions of the contract that created liability).

Under Maryland law, a defendant cannot tortiously interfere with an at-will employment contract. A party that "intentionally causes a third person not to continue an existing contract terminable at will does not improperly interfere with the contractual relation." *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 304-05 (1994); *see also* Restatement (Second) of Torts § 766 cmt. g. (providing that any interference with a contract terminable at will cannot be improper); *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 468 (1991) ("[I]f a contract is terminable at will . . . a competitor who induces breach of it . . . does not interfere improperly.").

Conversely, "where there is an existing contract, not terminable at will, between a plaintiff and a third party, acts by a defendant to induce the third party to breach that contract are . . . improper and wrongful." *Macklin*, 334 Md. at 304.

The complaint does not explicitly specify when CSC committed the tort or its state of knowledge at a particular time. While Discovery conclusorily alleges that CSC "was and is

9

aware of the existence of the Employment Agreement," the only facts alleged are that Discovery verbally notified CSC's vice president on August 24, 2012 and sent a letter to that effect on the same day. The alleged interference is the inducement of Mr. Colan to breach the agreement "by employing Mr. Colan."

In its opposition to the motion to dismiss, Discovery posits somewhat conflicting views of its allegations, suggesting that CSC interfered with Mr. Colan's employment contract when it first offered him a job and again later when it actually employed him. CSC responds that the complaint has failed to allege sufficiently that CSC had knowledge of the employment contract between Mr. Colan and Discovery when it extended an offer of employment to Mr. Colan sometime before August 17 and that there is no allegation in the complaint that Discovery notified CSC of the contract prior to the August 24 letter detailing the employment contract. With regard to the later date, CSC argues that there was no contract in existence by the time it employed Mr. Colan on August 31, 2012.

First of all, Discovery's allegation that "CSC was and is aware of the existence" of the employment contract is not sufficient to establish the knowledge element. Nor is its

contention that "the extent of [the defendant's] knowledge . . . [is] a matter[] of evidence, not pleading" availing.

Nowhere does the complaint allege that before August 17, CSC was aware that Mr. Colan's employment contract was a term of years contract and not an at-will employment contract. To survive a motion to dismiss, Discovery must have alleged that CSC knew of the contract at the time of interference and that the contract was not at will. *See Pitcock*, 915 N.Y.S.2d at 241 (concluding that plaintiff "has not alleged, in nonconclusory language, the essential terms of the parties' contract, including the specific provisions upon which liability is predicated").

In opposition to this motion, Discovery cites *Sensormatic Security Corporation v. Sensormatic Electronics Corporation* which notes that in the context of the knowledge element of a tortious interference with contract claim in that case, "the extent of [the defendant's] knowledge and proof of wrongful intent are matters of evidence, not pleading," and "[a]t the pleading stage, a plaintiff's burden is merely to allege facts, not to allege evidence." *Sensormatic Sec. Corp.*, 249 F.Supp.2d at 710. Decided in 2003, prior to *Twombly* and *Iqbal*, the *Sensormatic* decision is of limited relevance. Moreover, in

*Sensormatic*, the material before the court included a provision in the allegedly interfering party's contract limiting its application because of the potential existence of other contracts, thus implying knowledge of the existence of those contracts. *Sensormatic Sec. Corp.*, 249 F.Supp.2d at 709 ("Wallace asserts that its license agreement with Sensormatic limits its nationwide distribution rights to the extent those rights conflict with previously granted rights of third parties."). As noted above, Discovery's far more general allegations of CSC's knowledge of the contract are inadequate to state a claim of tortious interference with a contract. Because Discovery's claim is predicated on Mr. Colan's breach of the term of years provisions of the employment contract, rather than the breach of an at-will employment contract, Discovery must allege that CSC had knowledge of these specific provisions. Discovery has made no such factual allegation, and has failed to set forth facts that plausibly suggest that CSC knew before August 24 of the provisions that they purportedly caused Mr. Colan to breach. *See Architects Collective v. Gardner Tanenbaum Grp., L.L.C.*, No. 08-1354, 2010 WL 2721401, at *3 (W.D.Okla. July 6, 2010) (applying Restatement (Second) of Torts § 766 and dismissing tortious interference with a contract claim because

allegation that defendant "knew . . . of the existence of [third party's] contract with [p]laintiff" was insufficient to support tortious interference claim).

Discovery cannot save the complaint by arguing the alleged interference was CSC's act of employing Mr. Colan on August 31, because this date is after his employment with Discovery ended. The complaint alleges that a valid employment contract existed between it and Mr. Colan until August 30, when Mr. Colan terminated the contract, and that Discovery advised him in a letter dated August 27, 2012, that he had 10 days to cure his breach. Discovery argues that the issuance of a ten day cure period unilaterally extended the period of employment beyond the August 30, 2012 termination date. (ECF No. 8, at 6). CSC argues that "Discovery simply did not have the right to use the cure period to prevent Mr. Colan from electing to resign from Discovery." (ECF No. 9, at 6).

It is true that there is a general rule that "once a cure period has been granted, a contract may not be terminated until that period has expired." *Bell BCI Co. v. HRGM Corp.*, No. JFM-03-1357, 2004 WL 3222885, at *5 (D.Md. Aug. 6, 2004) (citations omitted). The exception to the general rule is that termination of a contract prior to the end of a cure period may be

13

appropriate when a party provides no assurance of performance and takes no action towards effectuating a cure. *Id.* The circumstances there are not analogous. Under the general rule, the party extending the opportunity to cure to the other party may not thereafter terminate the contract until the cure period expires. Here, the opposite happened. The party now claiming there was a breach is claiming that the other party could not terminate the contract before the expiration of the offered, but unaccepted, cure period.

Had Mr. Colan made an effort to cure his breach during the cure period, the parties might have remained bound by the contract. But because he made no such effort, the cure that Discovery offered had no effect on the termination of the contract. Accordingly, CSC's employment of Mr. Colan on August 31 cannot constitute interference with the contract because no contract existed between Discovery and Mr. Colan on that date.

## IV. Conclusion

Because Discovery has not sufficiently alleged either that CSC knew of the nature of Mr. Colan's employment contract with Discovery before August 24, or that the contract extended beyond August 30, its claim for tortious interference must be dismissed. Discovery has not sought leave to amend, and nothing

in the papers indicates that it could cure the pleading deficiencies. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
